*667 OPINION OF THE COURT
Marcia J. Sikowitz, J.
Petitioner simultaneously commenced two identical summary nonpayment proceedings, and respondent interposed defenses and counterclaims for retaliatory eviction and breach of the warranty of habitability. One petition was dismissed based on a defective predicate notice, and the second petition was dismissed based on improper service after a traverse hearing.
A trial was conducted on respondent’s counterclaims. The facts that are not in dispute include: the two instant summary proceedings seek rental arrears for March through July 1999, and petitioner timely received and deposited rent checks from respondent for these months prior to commencing the summary proceedings herein. In June 1997 petitioner commenced a summary nonpayment proceeding for March through June 1997, and petitioner’s own records reflect that the months sued for were timely paid by respondent, deposited by petitioner and recorded in petitioner’s ledger prior to the service of the notice of petition and petition.
Further, respondent William Henry has lived in the subject apartment since 1980. He has been president of the tenants’ association since 1989 when the building was converted to a cooperative after litigation with the tenants, and subsequently deconverted with the Federal Deposit Insurance Corporation (Freddy Mac) taking title. Respondent Henry has been president of the tenants’ association continually from 1989 to the present time.
The novel question presented is: whether respondent Henry can interpose the statutory defense of retaliatory eviction pursuant to Real Property Law § 223-b in the context of a nonpayment proceeding wherein respondent has timely paid the rent demanded continuously since at least 1997, and is not utilizing the statutory defense as a shield to be relieved of the obligation to pay rent? Framing the issue in another way, the question becomes: was it the intent of the Legislature, in limiting the retaliatory eviction defense to holdover proceedings, to deny to the respondent herein, an active and long-term president of a proactive tenants’ association, the protection of Real Property Law § 223-b based on the type of summary proceeding chosen by the landlord to harass and evict the tenant?
The court finds, in light of the legislative history of the statute, that under the narrow and specific fact pattern presented herein, that Real Property Law § 223-b does provide a defense *668 to respondent Henry. For the following reasons respondent is awarded a judgment against petitioner on his counterclaims.
FACTS
The procedural history of the instant nonpayment proceedings began when petitioner allegedly served respondent, William Henry in apartment 6N, with two summary nonpayment petitions, L&T 82116/99 dated July 9, 1999, and L&T 81747/99 dated July 7, 1999. Both petitions seek the same $1,887.45 in arrears and legal fees, and the court consolidated the files for trial. Respondent served a written answer in both proceedings which included counsel’s notice of appearance and counterclaims.
The gravamen of the pertinent counterclaims are breach of warranty of habitability and retaliatory eviction based on respondent’s claim that (1) no rent is or has ever been owed, (2) there exists a continuing pattern of summary nonpayment proceedings, and (3) respondent is president of the tenants’ association. Specifically, in respondent’s “Fifth Counterclaim and Set-Off,” he alleges in his verified answer that on two occasions after receiving the underlying five-day rent demand, he presented canceled checks for the rent demanded, and petitioner commenced the nonpayment proceedings. Respondent further alleged defenses of lack of personal jurisdiction based on respondent’s specific factual allegations supporting his claim for defective service of the petition and notice of petition.
Both proceedings were sent to Part Q for traverse and trial at which time respondent’s counsel moved to dismiss L&T 81747/99 based on a defective predicate notice. This application was granted, and the traverse hearing in L&T 82116/99 proceeded. The traverse hearing was conducted, and based on the credible evidence, the court sustained the traverse and dismissed the petition without prejudice by written decision. The respondent’s counterclaims were tried over a period of four days.
Retaliatory Eviction Counterclaim
Respondent’s first witness was petitioner’s employee, Wayne Brown, who manages the subject premises as well as other properties for GFI management company. Mr. Brown testified credibly and forthrightly on both direct and cross-examination, as did respondent William Henry. Based on both witnesses’ credible testimony the court makes the following findings of fact. Although petitioner’s witness has been employed by *669 petitioner for only IV2 years, he had petitioner’s rent records, ledgers and printouts going back to April 1997 when the subject premises was transferred by a deed dated April 14, 1997 to petitioner (respondent’s M). Mr. Brown testified credibly that according to the landlord’s records, respondent had a zero balance plus a credit of $409 for April 1997. In June 1997, GFI, the petitioner’s management company, by its employees Jerry Midgol, “Arthur,” and David Kramer, did a walk through the building with respondent Henry and the tenants’ association.
In June 1997 petitioner served a five-day rent demand notice on respondent Henry seeking rent from March 1, 1997 to June 30, 1997, and subsequently served nonpayment petition L&T 079771/97 on July 2, 1997. Respondent’s exhibit L, which is respondent’s canceled rent checks for the months of March through September 1997, was reviewed by Mr. Brown. Respondent’s contention that his rent was timely paid in full for the months sought in the 1997 petition was confirmed as accurate by Mr. Brown’s testimony regarding petitioner’s own rent records for that same time period. Specifically, petitioner’s agent testified that the landlord’s ledger for May 1997 reflects that the rent was timely paid, and that in fact all the months petitioner sued for in the 1997 petition were recorded as timely paid in the landlord’s ledger prior to the commencement of the 1997 nonpayment petition. The 1997 petition was discontinued by petitioner on July 15, 1997.
Mr. Wayne Brown’s testimony concerning respondent’s 1999 payment history and the two instant nonpayment proceedings parallels the 1997 pattern. The arrears sought in both instant petitions are March through August 1999. Mr. Brown confirmed that respondent’s canceled rent checks for February through July 1999 mirrors petitioner’s own rent history records which reflect that rent was timely received and credited for the months sought in the dual petitions. Significantly, the petitioner’s agent testified that the arrears petitioner sued for in the 1999 petitions had been received and credited by the landlord prior to the commencement of the two nonpayment proceedings. Upon a review of petitioner’s records of respondent’s entire rental history from April 1997 to October 1999, Mr. Brown testified that the tenant “pays his rent timely and consistently.”* Petitioner’s agent could not think of a reason to explain the three nonpayment petitions seeking “arrears” for *670 months the landlord’s records indicate the rent was timely paid, except to say that someone must have made an “error.” Further, Mr. Brown testified credibly that he has never seen two nonpayment petitions served so close together as the two instant petitions, and again has no explanation to offer except that it was a “human error.” Mr. Brown stated that the landlord never had any situation like Mr. Henry’s.
Breach of Warranty of Habitability Counterclaim
The evidence presented by respondent in support of his counterclaim for breach of warranty of habitability begins in August 1999 with his fax, dated August 10, 1999, notifying petitioner about a leak in the bathroom ceiling. Respondent included a request to restore lights in the bathroom, to correct a structural defect in the bathroom wall and ceiling, to replace bathroom tiles and do caulking, repair the kitchen sink cabinet, and repair the kitchen stove. Respondent testified credibly that in addition to the fax sent to “Arthur,” he also called the super and informed him that the water leaking from the bathroom ceiling was coming through the electrical light fixture in the bathroom, and that the chronic and reoccurring crack in the bathroom wall had returned. The super came to respondent’s apartment and inspected the bathroom in response to the August 1999 fax. Several weeks later, when no repairs had been attempted, the super informed respondent Henry that the roof leak, the apparent cause of the bathroom leaks, had still not yet been repaired. Mr. Brown testified that a roof repair is not within the province of the super and it is an “unusual” repair.
On August 8th, prior to sending the fax, respondent called “Gus,” the super, at 8:00 p.m. to report that there were leaks from the kitchen. The tenants below respondent’s apartment were also complaining about leaks and wetness. The super inspected respondent’s kitchen and left. At 2:30 a.m. the next morning, respondent Henry heard a “swooshing” noise and *671 awoke to discover water flowing out of the kitchen cabinet throughout the apartment. Respondent called the super, and then went to the building lobby in his pajamas to get the super. The super was able to turn off the water within 15 minutes. Although the broken kitchen pipe was repaired within one or two days, the kitchen sink cabinet was not replaced, and the leaks and cracks, and light fixture in the bathroom, were not repaired. In addition, exhibits BB, CC, and DD put petitioner on notice as of August 9, 1999 of the existence of leaks, vermin, and needed repairs to the stove, kitchen sink, bathroom ceiling and bathroom light fixture in the subject apartment. Petitioner concedes they did not come to inspect these repair items until October 1999. Petitioner stated that they could not repair the bathroom until the roof was repaired.
Based on the undisputed testimony concerning the conditions in respondent’s apartment from August through November 1999, respondent is awarded a judgment on his counterclaim for the breach of warranty of habitability in the amount of $156.36, which is 15% of the monthly rent ($380) from August 8 through November 1, 1999.
Legal Discussion
Retaliatory eviction is a statutory defense as well as a common-law defense in New York. Real Property Law § 223-b prohibits a landlord from serving a notice to quit or commencing a summary proceeding in retaliation for a tenant’s participation in the activities of a tenants’ association or organization. (Real Property Law § 223-b [1] [c].)
Real Property Law § 223-b creates a rebuttable presumption that the landlord’s acts are retaliatory, except that the rebut-table presumption does not apply to a proceeding based on the nonpayment of rent or other violation of the terms of the lease agreement. (Real Property Law § 223-b [5].) In the case at bar, wherein the alleged lease violation, i.e., nonpayment of rent, is unequivocally a baseless allegation manufactured by petitioner to evict and harass the tenant in three separate summary proceedings over a three-year period, the court finds that this is precisely the type of landlord behavior the statutory defense and presumption was enacted by the Legislature to combat. The legislation was drafted and passed specifically to protect tenants’ activities in a tenants’ association, among other delineated tenant acts, from retaliatory eviction. The bill was enacted to restore a balance in landlord-tenant relationships, and to ensure that landlords will not have an unfair advantage *672 over tenants, either in their homes or in courts of law. (Mem in Support, Bill Jacket, L 1979, ch 693.) Respondent Henry is, therefore, afforded the protection of the statutory presumption. However, it is clear that based on all the credible evidence, the respondent would be successful on bis retaliatory eviction counterclaim without the statutory presumption.
The Appellate Term in both the First and Second Departments has held that the statutory defense of retaliatory eviction cannot be interposed in a nonpayment proceeding based on the statutory language precluding the defense as a bar to payment of rent. (See, 390 W. End Assocs. v Raiff, 166 Misc 2d 730, 734 [App Term, 1st Dept 1995]; Merit Mgt. Co. v Ruscio, NYLJ, Feb. 4, 1992, at 21, col 2 [App Term, 1st Dept]; Ridgefield Apts. Assn. v Krakower, NYLJ, June 11, 1990, at 32, col 1 [App Term, 2d Dept].)
The Appellate Term, First Department, has ruled that since the statute expressly provides that a retaliatory eviction defense will not relieve the tenant of the obligation to pay rent, it may not be interposed as an affirmative defense or counterclaim in a nonpayment proceeding. (390 W. End Assocs. v Raiff, 166 Misc 2d 730, 734 [App Term, 1st Dept 1995], supra.) The facts presented to the Appellate Term in 390 W. End Assocs. v Raiff, and the above-cited cases that the Appellate Term, First Department, relied upon, are inapposite to the facts presented herein as the tenants in all of those proceedings admittedly owed rent. The undisputed facts in the instant nonpayment proceedings are that respondent Henry was current in his rental payments, and the retaliatory eviction defense was not interposed to relieve the tenant of the obligation to pay rent.
The court finds, based on the credible evidence, that petitioner acted in retaliation for respondent’s engagement in “protected acts” (i.e., serving as president of the tenants’ association), and would not have otherwise commenced the three summary proceedings. The history of summary nonpayment proceedings commenced against respondent, in light of petitioner’s concession that no rent was owed, is prima facie evidence of retaliatory eviction by the landlord. (Real Property Law § 223-b [5].) Petitioner offered no credible explanation of a nonretaliatory motive for its conduct. Landlords who violate the statute are subject to civil damages, and therefore, respondent is awarded a judgment against petitioner on his counter *673 claims for retaliatory eviction in the amount of $3,000 (Real Property Law § 223-b [3]), and a judgment for $156.36 on his breach of the warranty of habitability counterclaim.

 There was extensive testimony from both Mr. Brown and respondent Henry regarding a Division of Housing and Community Renewal (DHCR) rent reduction order, the eventual restoration of that reduction, and the ef *670 forts the landlord spent with various tenants to collect the arrears it created for the tenants. Both parties testified as to their respective versions of a tenants’ meeting with petitioner regarding the tenants’ options for repayment. Although respondent Henry testified he was not given the same DHCR authorized options to repay as other tenants were offered, that claim is not relevant to the prima facie case respondent is required to prove pursuant to Real Property Law § 223-b for a retaliatory eviction defense. Similarly, the petitioner’s testimony regarding their various efforts to collect respondent’s arrears created by the DHCR restoration order does not provide a basis for the nonpayment petitions, as petitioner’s witness conceded.